UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------
LEVERNE WALKER, on behalf of himself and
all other persons similarly situated,

                         Plaintiff,

                     v.

18TH AND WALNUT LLC, d/b/a
DAGNE DOVER

                    Defendant.
-------------------------------------------------------------------

Docket No.

**CLASS ACTION
COMPLAINT &
DEMAND FOR
JURY TRIAL**

Plaintiff, LEVERNE WALKER, ("Plaintiff" or "Mr. Walker") on behalf of himself and

all other persons similarly situated (collectively, "Plaintiffs"), by and through their undersigned

counsel, Robert Schonfeld, Esq. (of counsel to JOSEPH & NORINSBERG, LLC) as and for their

putative class action complaint upon Defendant, 18TH AND WALNUT LLC, d/b/a DAGNE

DOVER ( "Dagne Dover" or "Defendant"), hereby alleges as follows:

## **INTRODUCTION**

1.      Plaintiff, LEVERNE WALKER is a legally blind resident of Bronx County,

residing at an assisted living facility at 211 East 203rd Street, Bronx New York 10458, for visually

impaired individuals. He has been diagnosed with Diabetic Retinopathy, a progressive retinal

disease caused by long-term diabetes-related vascular damage. His condition and legal blindness

status are documented by Dr. Eleonora Orloff, OD, of Bronx Eye Associates (See Exhibit A.)

2.      Defendant 18TH AND WALNUT LLC d/b/a DAGNE DOVER ("Dagne Dover"

or "Defendant") owns, operates, and controls the commercial website www.dagnedover.com

1

website", through which it advertises, markets, and sells its collection of bags, travel goods, and accessories to consumers throughout the United States, including residents of New York. The Website functions as an interactive retail platform and digital gateway to physical services such as in-store pickup, warranty fulfillment, and customer support.

3.　　Mr. Walker is a proficient user of NonVisual Desktop Access (NVDA) screen reader software, which he relies on daily to navigate digital environments independently. His fluency with keyboard commands and screen-reading protocols enables him to engage with complex content, including in relevant part, Defendant's e-commerce website (www.dagnedover.com),which offers product browsing, customization, checkout, and account-management functions; interactive retail features such as product-filter menus, color and size selectors, promotional pop-ups, and dynamic cart interfaces; digital customer-service portals for warranty and order inquiries; and integrated marketing content accessible through linked social-media and loyalty platforms, without assistance. NVDA's compatibility with its preferred assistive technologies is indispensable to its autonomy and digital accessibility.

4.　　On multiple occasions in 2026, Plaintiff attempted to access Defendant's Website www.dagnedover.com, using NVDA screen-reading technology from his home in Bronx County, New York, in order to research and purchase Dagne Dover products, including the Landon Carryall Neoprene Duffle Bag and items featured on the Best Travel Bags collection page. Both pages contained pervasive accessibility barrierssuch as missing alternative text for linked product images, empty buttons, broken ARIA references, and unlabeled form fields,that rendered critical shopping functions unreadable to screen-reader software. These defects prevented Plaintiff from identifying product specifications,

2

selecting available options, and completing a purchase independently.

5.      Plaintiff's attempts were thwarted by numerous accessibility barriers confirmed by two  (2)  WAVE (Web Accessibility Evaluation Tool) reports (annexed  and  attached  hereto) for the relevant sections                              and                              pages, including 116 errors on the Landon Carryall page and 202 errors on the Best Travel Bags page. These included missing meaningful alternative text for linked product images, empty buttons, empty links, improper ARIA attributes, skipped and missing heading levels, redundant links, and structural issues that rendered core navigation, product selection, and purchasing functions unusable by screen readers. Exhibit B

6.       Defendant's failure to design, construct, maintain, and operate its Website in a manner that is fully accessible to and independently usable by blind and visually impaired individuals constitutes discrimination in violation of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 et seq., the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law art. 15, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 et seq.

7.      Plaintiff seeks declaratory and injunctive relief requiring Defendant to revise its digital policies and practices to ensure that its website is—and remains—fully accessible to blind and visually impaired users. Mr. Walker remains committed to maintaining a technology regimen that supports his independence and productivity. Without remediation of the barriers described herein, he will continue to be excluded from accessing Defendant's goods and services on equal terms.

8.      Defendant's ongoing failure to provide accessible digital services constitutes a

denial of full and equal access under Title III of the ADA. Plaintiff respectfully requests that this Court issue a temporary and permanent injunction compelling Defendant to bring its website into compliance with federal accessibility standards.

## JURISDICTION AND VENUE

9. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12182 because Plaintiff's claims arise under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12182, et seq.

10. Supplemental jurisdiction over Plaintiff's state and local claims is proper under 28 U.S.C. § 1367. These claims arise under the New York State Human Rights Law, Article 15 (Executive Law § 290 et seq.) ("NYSHRL"); the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq. ("NYCHRL"); and the New York State Civil Rights Law, Article 4, §§ 40-c and 40-d ("NYCRL").

11. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §§ 1391(b) and (c). Defendant 18TH AND WALNUT LLC DBA DAGNE DOVER conducts substantial and continuous business in this District through its interactive website, www.dagnedover.com. Plaintiff accessed and attempted to use this website from his residence in Bronx County, and the discriminatory conduct giving rise to this action occurred within the jurisdiction of this Court.

12. Defendant is a Delaware limited liability company with its principal place of business located at **515 Greenwich Street, Suite 504, New York, NY 10013**, and is registered to do business in New York State. Defendant actively engages in commercial transactions with New York residents through its website, including product selection, customization, chec

4

mmmmnsmits data and files into New York, establishing purposeful availment under federal prec

edent. See *Reed v. 1-800-Flowers.com, Inc.*, 327    F. Supp. 3d 539 (E.D.N.Y. 2018); *Andrews*

*v. Blick Art Materials, LLC,* 286 F. Supp. 3d 365 (E.D.N.Y. 2017); *Ford Motor Co. v. Mont.*

*Eighth Judicial Dist. Court*, 592 U.S. ___ (2021); *South Dakota v. Wayfair, Inc.,* 585 U.S. ___

(2018); G*odfried v. Ford Motor Co.,* 2021 U.S. Dist. LEXIS 87012 (D. Me. May 6, 2021); *Romero*

*v. 88 Acres Foods, Inc.,* 2022 U.S. Dist. LEXIS 9040 (S.D.N.Y. Jan. 18, 2022); Sanchez v. NutCo,

Inc., 2022 U.S. Dist. LEXIS 51247 (S.D.N.Y. Mar. 22, 2022); *Panarra v. HTC Corp.*, No. 6:20-

cv-6991 (W.D.N.Y. Apr. 15, 2022).

13.    Accordingly, jurisdiction and venue are properly established in this District. Courts

have consistently held that accessibility barriers encountered by users within the forum state

provide a sufficient basis for asserting personal jurisdiction over out-of-state website operators.

## NATURE OF ACTION

14.    This action arises under Title III of the Americans with Disabilities Act, 42 U.S.C.

§ 12181 et seq., challenging Defendant's operation of a public-facing website that denies blind

and visually impaired individuals full and equal access. Plaintiff, a legally blind resident of this

District, attempted to access Defendant's website using screen-reading software but encountered

multiple access barriers that prevented meaningful engagement with its services. Defendant's

failure to design and maintain its website in accordance with the Web Content Accessibility

Guidelines (WCAG 2.1) constitutes unlawful discrimination and violates federal accessibility

standards.

15.    The Internet has become a vital source of information and a primary tool for

conducting everyday activities such as shopping, learning, banking, researching, and

5

communicating—for sighted, blind, and visually impaired individuals alike.

16.     In today's digital environment, blind and visually impaired individuals access websites using keyboards in conjunction with screen access software that vocalizes visual content or displays it on a refreshable Braille device. This technology, known as screen-reading software, is currently the only method by which blind or visually impaired persons may independently access the Internet. Unless websites are properly coded to interface with screen-reading software, blind and visually impaired users are unable to fully access the information, products, and services offered online.

17.     Users of Windows-enabled computers have access to several screen-reading programs, including Job Access With Speech ("JAWS"), which is commercially available, and NonVisual Desktop Access ("NVDA"), which is open-source. These tools are indispensable for blind users and represent the only means by which they can independently navigate the Internet.

18.     Plaintiff, LEVERNE WALKER is a blind, visually impaired individual and a member of a protected class under the ADA, 42 U.S.C. § 12102(1)-(2), its implementing regulations at 28 C.F.R. §§ 36.101 et seq., and the NYCHRL. To access the Internet, Plaintiff relies on screen-reading software such as NVDA for Windows.

19.     For screen-reading software to function, website content must be capable of being rendered into text. If the underlying code fails to support this conversion, blind users are unable to access the same content available to sighted users. Screen-reading software "translates the visual Internet into an auditory equivalent. At a rapid pace, the software reads the content of a webpage to the user." *Andrews v. Blick Art Materials, LLC,* 286 F. Supp. 3d 365, 375 (E.D.N.Y. 2017). As Judge Weinstein explained:

"The screen reading software uses auditory cues to allow a visually impaired user to effectively use websites. For example, when using the visual internet, a seeing user learns that a link may be 'clicked,' which will bring her to another webpage, through visual cues, such as a change in the color of the text… The screen reading software uses auditory—rather than visual—cues to relay this same information… Through a series of auditory cues read aloud by the screen reader, the visually impaired user can navigate a website by listening and responding with her keyboard."

See also American Federation for the Blind, *Screen Readers*, AFB Technology Guide (last accessed June 12, 2025), estimating that 26 million American adults report sight deficiency.

20. The World Wide Web Consortium ("W3C") has published the Web Content Accessibility Guidelines ("WCAG") 2.0 and 2.1, which establish internationally recognized standards for digital accessibility. These guidelines are widely adopted by private entities and government agencies, including the U.S. Department of Justice, and have been recognized by courts as the appropriate benchmark for ADA compliance.

21. Non-compliant websites pose recurring barriers to blind and visually-impaired users. Common violations include, but are not limited to:

a. Missing text equivalents for non-text elements

b. Unlabeled frames and navigation regions

c. Scripts without accessible alternatives

d. Inaccessible forms and input fields

e. Content conveyed solely through visual presentation

f. Inability to resize text without loss of functionality

g. Time limits that cannot be adjusted or disabled

h. Missing or ambiguous page titles

i. Links lacking descriptive context

j. Keyboard focus indicators that are not discernible

k. Undetectable default language settings

l. Components that trigger unexpected context changes

m. Settings that alter context without user notice

n. Input fields lacking labels or instructions, including inaccessible CAPTCHA prompts

o. Improperly nested markup, duplicate attributes, and non-unique IDs

p. Inaccessible Portable Document Format (PDF) files

q. User interface elements whose roles and states cannot be programmatically determined items that can be set by the user cannot be programmatically set; and/or notification of changes to these items is not available to user agents, including assistive technology.

## STATEMENT OF FACTS

22.    Plaintiff LEVERNE WALKER is a legally blind consumer residing at an assisted-living facility for visually impaired individuals located at **211 East 203rd Street, Bronx, New York 10458**. He receives weekly therapy sessions and assistive-technology training at the **Lighthouse Guild**, a nationally recognized vision-rehabilitation center located at **250 West 64th Street, New York, NY 10023**, which requires him to commute from the Bronx to Manhattan. The Lighthouse Guild provides comprehensive services including orientation and mobility instruction, digital-accessibility education, and vocational rehabilitation for blind and visually impaired individuals. Thr

ough these programs, Mr. Walker has developed proficiency in screen-reading software such as NonVisual Desktop Access ("NVDA") and uses these skills to navigate digital content independently.

23.    On **March 12, 2026**, Mr. Walker visited Defendant's commercial website, www.dagnedover.com, using NVDA screen-reading software from his home in Bronx County with the intent to purchase a **Medium Landon Carryall Neoprene Duffle Bag** for use as a gym and travel bag. He selected this product because of its advertised capacity to fit a 13-inch laptop and a change of clothes—features important to his daily commute and exercise routine.

24.    While navigating the Landon Carryall product page, Mr. Walker encountered specific barriers that prevented him from completing his purchase: (1) missing alternative text on product images caused NVDA to announce only "image" or file names such as "landon-carryall-onyx.jpg," preventing him from distinguishing colors or styles; (2) empty form labels on the size selection menu caused NVDA to read "combo box" without context, making it impossible to select Small, Medium, or Large sizes; (3) broken ARIA references on the "Add to Bag" button caused NVDA to announce silence when focus moved to the control, leaving Mr. Walker unable to add the item to his cart; and (4) empty buttons within the color selector made NVDA repeat "button button button" without identifying the color options (Onyx, Dark Moss, Camel, Dune).

25.    On **April 9, 2026**, Mr. Walker attempted to view the **Kyoto Pet Carrier** product page as part of his ongoing pre-planning for the anticipated acquisition of a guide dog through a licensed service-animal training organization in New York City. The organization requires participants to prepare for ownership by obtaining essential equipment in advance, including a durable carrier, travel bag, and mobility accessories. Mr. Walker was unable to read the product dimensions or m

9

aterial details because the specifications were embedded in an image without alternative text. The "Add to Bag" button was unlabeled, and the "Size Guide" link was a broken anchor that redirected to an empty tab. NVDA announced, "link blank" and then silence, preventing Mr. Walker from determining whether the product met his needs for service-animal training and travel compliance.

26.     On **April 9, 2026**, Mr. Walker attempted to view the **Kyoto Pet Carrier** product page as part of his ongoing pre-planning for the anticipated acquisition of a guide dog through a licensed service-animal training organization in New York City. The organization requires participants to prepare for ownership by obtaining essential equipment in advance, including a durable carrier, travel bag, and mobility accessories. Mr. Walker was unable to read the product dimensions or material details because the specifications were embedded in an image without alternative text. The "Add to Bag" button was unlabeled, and the "Size Guide" link was a broken anchor that redirected to an empty tab. NVDA announced "link blank" and then silence, preventing Mr. Walker from determining whether the product met his needs for service-animal training and travel compliance.

27.     Two independent WAVE (Web Accessibility Evaluation Tool) audits conducted on **April 5, 2026,** and **April 9, 2026,** confirmed these issues. The audit of the Landon Carryall page identified **116 errors**, including **79 empty form labels**, **8 empty buttons**, and **16 broken ARIA references**. The Best Travel Bags collection page contained **202 errors**, including **188 empty form labels** and **multiple missing ARIA attributes**. These defects rendered core shopping functions unusable by screen-reader software, preventing blind users from identifying product names, prices, and interactive controls.

28.     Mr. Walker attempted to access Defendant's customer-service and accessibility resources through the Website's footer links on each visit. NVDA was unable to locate any functional

accessibility statement or alternative contact method. The links to "Customer Service," "Product Care," and "Accessibility Statement" were non-functional or redirected to blank pages, leaving Mr. Walker without a means to report barriers or request assistance.

29.    Defendant 18TH AND WALNUT LLC has been previously sued for identical violations of the ADA and WCAG standards. In *DelaCruz v. 18TH AND WALNUT LLC*, No. 1:24-cv-08779 (S.D.N.Y. Nov. 18, 2024), the plaintiff alleged that www.dagnedover.com was inaccessible to blind users and failed to comply with WCAG 2.1 Level A and AA standards. Despite this prior litigation and explicit notice of accessibility obligations, Defendant has failed to implement lasting remediation. The recurrence of identical barriers—

confirmed by the WAVE reports and experienced firsthand by Mr. Walker—

demonstrates that Defendant had actual notice of its accessibility deficiencies yet failed to take corrective action.

30.    Mr. Walker intends to return to www.dagnedover.com as soon as the accessibility barriers are removed to complete his purchase of the Medium Landon Carryall and Large Dakota Backpack, and to evaluate the Kyoto Pet Carrier for his service-dog preparation program. He has a continuing interest in Defendant's goods and services and is deterred from returning only by the Website's persistent inaccessibility. Without remediation, he will continue to be excluded from accessing Defendant's goods and services on equal terms.

## CLASS ACTION ALLEGATIONS

31.    Plaintiff LEVERNE WALKER brings this action individually and on behalf of all others similarly situated pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure. The class consists of all legally blind individuals in the United States who have attempted to acces

11

s Defendant's commercial website, www.dagnedover.com, and encountered accessibility barriers that prevented full and equal use of its goods and services.

32.    Mr. Walker remains highly motivated to return to www.dagnedover.com once it is made accessible. His interest is concrete, particularized, and ongoing: he still intends to purchase the Medium Landon Carryall Neoprene Duffle Bag for his daily commute, the Large Dakota Backpack for his therapy and training sessions at the Lighthouse Guild, and the Kyoto Pet Carrier as part of his pre-planning for a service-dog acquisition through a licensed guide-dog training organization. These products are not reliably available to him through third-party platforms or offline channels, and he requires full access to Defendant's product pages, cart, account, and customer-service features to complete the intended transactions.

33.    Plaintiff has suffered a past injuryhis inability to complete intended purchases of specific products due to documented accessibility barriers
and faces a real and immediate threat of future harm, given his stated intent to return once the Web site is accessible and the continuing presence of site-wide accessibility defects. His injuries are directly traceable to Defendant's failure to design, construct, and maintain an accessible Website and are redressable through injunctive relief under 42 U.S.C. § 12188(a)(2).

34.    The members of the proposed class are so numerous that joinder of all individual members is impracticable. According to the American Foundation for the Blind, millions of Americans are blind or visually impaired and use screen-reading software to access digital content. Defendant's Website is a national retail platform accessible to consumers in all fifty states, and the same barriers encountered by Mr. Walker affect all blind users who attempt to access it.

35.    Common questions of law and fact exist among class members and predominate ov

er any individual issues, including: (a) whether Defendant's Website contains accessibility barriers in violation of Title III of the ADA; (b) whether Defendant failed to adopt and implement policies to ensure ongoing compliance with WCAG 2.1 Level A and AA standards; and (c) whether injunctive relief is necessary to remedy Defendant's discriminatory practices.

36.    Mr. Walker's claims are typical of the claims of the class because he and all class members are blind or visually impaired individuals who have been denied equal access to Defendant's Website due to the same systemic barriers. Mr. Walker will fairly and adequately protect the interests of the class, and he has retained experienced counsel competent in ADA and digital-accessibility litigation.

37.    Defendant has acted or refused to act on grounds generally applicable to the class, making final injunctive relief appropriate with respect to the class as a whole. Plaintiff seeks a permanent injunction requiring Defendant to remediate its Website to conform to WCAG 2.1 Level A and AA standards and to adopt policies ensuring ongoing compliance for all blind and visually impaired consumers.

**FIRST CAUSE OF ACTION**
**(Violations of the ADA, 42 U.S.C. § 12182 *et seq.*)**

38.    Plaintiff, LEVERNE WALKER, on behalf of himself and the Class Members, repeats and  realleges every allegation of the preceding paragraphs as if fully set forth herein.

39.    Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 *et seq.,* provides:

No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns,

13

leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

40.     Defendant's Website, www.dagnedover.com that is offered as a link to the company is a service that is offered to the general public, and as such, must be equally accessible to all potential consumers.

41.     Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

42.     Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, inter alia:

[A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; [and] a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

14

42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

43.     The acts alleged herein constitute violations of Title III of the ADA and the regulations promulgated thereunder. Plaintiff, who is a member of a protected class of persons under the ADA, has a physical disability that substantially limits his major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)-(2)(A). Furthermore, Plaintiff has been denied full and equal access to the Website, has not been provided services that are provided to other patrons who are not disabled, and has been provided services that are inferior to the services provided to non-disabled persons. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as the violations are ongoing.

44.     Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff requests relief as set forth within the section **Prayer For Relief** below.

## SECOND CAUSE OF ACTION
**(Violation of the New York State Human Rights Law)**

45.     Plaintiff LEVERNE WALKER, on behalf of himself and the Class and New York City Sub-Classes Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

46.     At all times relevant to this action, the New York State Human Rights Law ("NYSHRL"), Article 15 of the New York Executive Law §§ 290 *et seq.*, covers the actions of the Defendants.  Plaintiff, at all times relevant to this action, as a result of his loss of vision, has a substantial impairment to a major life activity and is an individual with a disability under Article 15 of N.Y. Executive Law § 292(21).

15

47.    Defendants, at all relevant times to this action, own and operate a place of public accommodation, the subject Website, www.dagnedover.com the meaning of Article 15 of N.Y. Executive Law § 292(9).  Defendant is a "person" within the meaning of Article 15 of N.Y. Executive Law § 292(1).

48.    Plaintiff has visited the Website on a number of occasions and has encountered barriers to his access that exist.

49.    Under Article 15 N.Y. Executive Law § 296(2)(a) "it shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation ... because of the ... disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

50.    Discrimination includes the refusal to adopt and implement reasonable modifications in policies, practices, or procedures when they are necessary to afford facilities, privileges, advantages, or accommodations to individuals with disabilities. Article 15 of N.Y. Executive Law § 296(2)(a), § 296(2)(c)(i).

51.    Defendant's actions violate Article 15 of N.Y. Exec. Law § 296(2)(a) by discriminating against the Plaintiff and Subclass by (i) owning and operating a website that is inaccessible to disabled individuals who are sight-impaired and cannot discern the content thereof without the use of a screen-reading program; (ii) by not removing access barriers to its Website in order to make accessibility features of the sites known to disabled individuals who are sight-impaired; and (iii) by refusing to modify the Website when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities.  This

inaccessibility denies disabled individuals who are sight-impaired full, and equal access to the facilities, goods, and services that the Defendant makes available to individuals who are not disabled and can see without the need of a screen-reading program or other similar device. Article 15 of N.Y. Exec. Law § 296(2)(c).

52.    The Defendant's discriminatory practice also includes, "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden." Article 15 of N.Y. Exec. Law § 296(2)(c).

53.    Established guidelines exist for making websites accessible to disabled individuals. The International Website Standards Organization, the Worldwide Consortium, known throughout the world as "W3C," has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1").  WCAG 2.1 is well-established guideline for making websites accessible to the blind and visually impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure websites are accessible.

54.    Defendant has intentionally and willfully discriminated against the Plaintiff and Subclass and violation of the New York State Human Rights Law, Article 15 of N.Y. Exec. Law § 296(2) and the discrimination continues to date.

55.    Absent injunctive relief, Defendant's discrimination will continue against Plaintiff and Subclass, causing irreparable harm.

56.    Plaintiff and the Subclass are therefore entitled to compensatory damages, civil

17

penalties, and fines for every discriminatory act in addition to reasonable attorney fees and costs and disbursements of this action. Article 15 of N.Y. Exec. Law §§ 297(9), 297(4)(c) *et seq.*

### THIRD CAUSE OF ACTION
**(Violation of New York State Civil
Rights Law) ("NYCRL")**

57. Plaintiff, LEVERNE WALKER, on behalf of himself and the New York City Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

58. Plaintiff served notice thereof upon the New York State Attorney General, as required by N.Y. Civil Rights Law § 41. (Exhibit 1) (Notice to Attorney General)

59. Persons within New York State are entitled to full and equal accommodations, advantages, facilities, and privileges of places of public accommodations, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. No person, being the owner of a place of public accommodation, shall directly or indirectly refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities, and privileges thereof. N.Y. Civ. Rights Law § 40.

60. No person because of disability, as defined in § 292(21) of the Executive Law, shall be subjected to any discrimination in his or her civil rights by person or by any firm, corporation, or institution, or by the state or any agency or subdivision. N.Y. Civ. Rights Law ("NYCRL") § 40-c.

61. § 292 of Article 15 of the N.Y. Executive Law deems a disability a physical, mental, or medical impairment resulting from anatomical, physiological, genetic, or neurological conditions that prevent the exercise of a normal bodily function. As such, the Plaintiff is disabled

18

under the N.Y. Civil Rights Law.

62.    Defendant discriminates against the Plaintiff and Subclass under NYCRL § 40 as Defendant's Website is a place of public accommodation that does not provide full and equal accommodation, advantages, facilities, and privileges to all persons and discriminates against disabled individuals who are sight impaired.

63.    Defendant intentionally and willfully failed to remove the barriers on their Website, discriminating against the Plaintiff and Subclass preventing access in violation of NYCRL § 40.

64.    Defendant has failed to take any steps to halt and correct its discriminatory conduct and discriminate against the Plaintiff and the Subclass members.

65.    Under N.Y. Civil Rights Law § 41, "a corporation which violates any of the provisions of §§ 40, 40-a, 40-b or 42 shall be liable for a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby… in any court of competent jurisdiction in the county in which the plaintiff or defendants shall reside." *Id...*

66.    Plaintiff and the SubClass hereby demand compensatory damages of five hundred dollars ($500.00) for the Defendant's acts of discrimination, including civil penalties and fines under N.Y. Civil Law § 40 *et seq.*

**FOURTH CAUSE OF ACTION**
**(Violations of the New York City Human Rights Law)**
**("NYCHRL")**

67.    Plaintiff, LEVERNE WALKER, on behalf of himself and the New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

19

68.    N.Y.C. Administrative Code § 8-107(4)(a) provides that "It shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation: [b]ecause of any person's . . . disability . . . directly or indirectly: [t]o refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation".

69.    Defendant is subject to NYCHRL because it owns and operates the Website www.dagnedover.com  making it a "person" within the meaning of N.Y.C. Admin. Code § 8-102(1).

70.    Defendant violates N.Y.C. Administrative Code § 8-107(4)(a) in refusing to update or remove access barriers to Defendant's Website, causing the Website and the services integrated completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, products, and services that Defendant makes available to the non-disabled public.

71.    Defendant is required to "make reasonable accommodation to the needs of persons with disabilities . . . any person prohibited by the provisions of [§ 8-107 *et seq.*] from discriminating based on disability not to provide a reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job or enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." N.Y.C. Admin. Code § 8-107(15)(a).

72.    Defendant's actions constitute willful intentional discrimination against the Sub-Class based on a disability in violation of the N.Y.C. Administrative Code § 8107(4)(a) and § 8-

107(15)(a), in that Defendant has:

    a.    constructed and maintained a Website that is inaccessible to blind class members with knowledge of the discrimination; and/or

    b.    constructed and maintained a Website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

    c.    failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

73.    Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as these violations are ongoing.

74.    As such, Defendant discriminates and will continue in the future to discriminate against Plaintiff and other members of the proposed class and subclass based on disability in the full and equal enjoyment of the products, services, facilities, privileges, advantages, accommodations and/or opportunities of the Website under N.Y.C. Administrative Code § 8-107(4)(a). Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the Class will continue to suffer irreparable harm.

75.    Defendant's actions were to violate the NYCHRL, and therefore, Plaintiff invokes the right to injunctive relief to remedy the discrimination.

76.    Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) for each offense as well as punitive damages pursuant to § 8-502.

77.    Plaintiff is also entitled to reasonable attorneys' fees and costs.

78.    Under N.Y.C. Administrative Code § 8-120 and § 8-126 and the remedies,

21

procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

## FIFTH CAUSE OF ACTION
### (Declaratory Relief)

79.     Plaintiff, LEVERNE WALKER, on behalf of himself and the Class and New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

80.     An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that the Website contains access barriers denying blind customers the full and equal access to the products, services and facilities of the Website, which Defendant owns, operates and controls, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.*, and N.Y.C. Admin. Code § 8-107, *et seq.*, prohibiting discrimination against the blind.

81.     A judicial declaration is necessary and appropriate at this time so that each of the parties may know its respective rights and duties and act accordingly.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court grant the following relief:

a.     A preliminary and permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq.,, Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. Section 794; N.Y.C. Administrative Code § 8-107, et seq., and the laws of New York;

b.     A preliminary and permanent injunction requiring Defendant to take all the

22

steps necessary to make the Website fully compliant with the requirements set forth in the ADA, and the implementing regulations, so that the Website is readily accessible to and usable by blind individuals;

c.     A declaration that Defendant owns, maintains and/or operates the Website in a manner that discriminates against the blind and which fails to provide access for persons with disabilities as required by Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq.,; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. Section 794; N.Y.C. Administrative Code § 8-107, et seq., and the laws of New York;

d.     An order certifying the Class and Sub-Classes under Fed. R. Civ. P. 23(a) & (b)(2) and/or (b)(3), appointing Plaintiff as Class Representative, and Plaintiff's attorneys as Class Counsel;

e.     Compensatory damages in an amount to be determined by proof, including all applicable statutory and punitive damages and fines, to Plaintiff and the proposed class and subclasses for violations of civil rights under New York City Human Rights Law, the New York State Human Rights Law and the New York State Civil Rights Law;

f.     Pre-judgment and post-judgment interest;

g.     An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

h.     Such other and further relief as this Court deems just and proper.

**DEMAND FOR TRIAL BY JURY**

23

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all questions of fact the Complaint raises.


Dated: New York, New York
      August 11, 2026

            Respectfully submitted,
            **JOSEPH & NORINSBERG, LLC**
            */s/ Robert Schonfeld*
            Robert Schonfeld, Esq
            *Attorneys for Plaintiff*
            825 Third Avenue, Suite 2100
            New York, New York 10022
            Tel. No.: (212) 227-5700
            Fax No.: (212) 656-1889
            rschonfeld@employeejustice.com